PUBLISH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 13-cv-00346-REB

PAMELA HANKEN,

    Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[2] filed February 8, 2013, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

---

    [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. **FED. R. CIV. P.** 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action need to taken to continue this lawsuit.

    [2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of various mental health impairments, as well as by back strain, sciatica, and numbness of her left foot and leg. Plaintiff previously filed applications for disability insurance benefits and supplemental security income benefits in 2007. Following a hearing, the administrative law judge (ALJ) denied those applications, finding that plaintiff's alleged mental and physical impairments were not severe at that time. The Appeals Council denied review, and plaintiff did not appeal that decision to this court.

Plaintiff filed new applications for disability insurance benefits and supplemental security income benefits in July 2010. When hose applications were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on May 4, 2012. At the time of this most recent hearing, plaintiff was 49 years old. She has high school education and past relevant work experience as a shoe salesperson and an order selector. She has not engaged in substantial gainful activity since May 16, 2009, the first day following the ALJ's prior unfavorable decision. For purposes of disability insurance benefits, plaintiff's date last insured was September 30, 2009.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. For purposes of plaintiff's application for disability insurance benefits, the ALJ found that her alleged impairments were not severe between May 16, 2009, and her date last insured. With respect to the application for supplemental security income benefits, the ALJ found that as of the date of the application in July 2010, the medical evidence established that plaintiff suffered from severe impairments, but that the severity of those impairments did

not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform a limited range of simple, unskilled, light work with certain postural limitations which required no more than occasional but only incidental contact with the general public. This residual functional capacity was consistent with plaintiff's past relevant work as an order selector. The ALJ therefore found plaintiff not disabled at step 4 of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).[3]  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

---

[3] Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff claims the ALJ erred by (1) failing to disqualify himself from the case; (2) rejecting plaintiff's motion to reopen the prior applications; (3) discrediting her subjective reports of pain and functional limitation; and (4) assessing her residual functional capacity. Finding no such reversible error, I affirm.

Due process guarantees a hearing before a fair and impartial tribunal. *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *Harline v. Drug Enforcement Administration*, 148 F.3d 1199, 1203 (10th Cir. 1998). The Commissioner's own regulations ensure that "[a]n administrative law judge shall not

5

conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940.  Nevertheless, an administrative law judge enjoys a presumption of honesty and integrity.  *Withrow*, 96 S.Ct. at 1464.  Plaintiff bears the burden of rebutting that presumption by demonstrating "some substantial countervailing reason to conclude that [the ALJ] is actually biased with respect to factual issues being adjudicated." *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986).

Plaintiff has failed to rebut that presumption here.  At best, and even accepting as true plaintiff's interpretation of the transcript of the administrative hearing, the record demonstrates a terse and perhaps impatient adjudicator who may have grown frustrated in his attempts to keep the administrative hearing on track.  Moreover, it is clear that the ALJ had developed opinions about the issues based on his previous adjudication of plaintiff's prior applications.  Yet neither of these circumstances is sufficient to demonstrate the type or degree of bias that warrants disqualification:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . . *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display.  A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

***Liteky v. United States***, 510 U.S. 540, 555-556, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994) (emphasis in original).  Nothing in the record before me supports a conclusion that the ALJ exhibited "such a high degree of favoritism or antagonism as to make fair judgment impossible."  ***Id.***  Remand is not warranted on this basis.

Plaintiff also assigns error to the ALJ's refusal to reopen the prior applications.  Judicial review of decisions of the Social Security Administration is limited to "final decisions of the Commissioner made after a hearing."  42 U.S.C. § 405(g).  A petition to reopen, however, may be denied without a hearing under the Social Security Act.  ***Califano v. Sander***, 430 U.S. 99, 108, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977).  Thus "the opportunity to reopen final decisions and any hearing convened to determine the propriety of such action are afforded by the [Commissioner's] regulations and not by the Social Security Act," ***id.***, and the regulations specifically provide that the denial of a request to reopen is not subject to judicial review, 20 C.F.R. §§ 404.903(*l*) & 416.1403(5).

There is a limited exception for cases in which the plaintiff has alleged a colorable constitutional claim.  ***Califano***, 97 S.Ct. at 986 ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions. . . . [W]hen constitutional questions are in issue, the availability of judicial review is presumed[.]").  To the extent plaintiff intends to assert that her alleged mental limitations rendered her incompetent to pursue her appellate rights and that Social Security Ruling 91-5p, 1991

WL 208067 at *2 (SSA July 1, 1991)[4], would require a finding of good cause in those circumstances, I find such arguments unavailing.  As in **Devereaux v. Chater**, 1996 WL 98956 at *4 (10th Cir. March 7, 1996), the ALJ here specifically addressed plaintiff's allegation that she lacked the mental capacity to pursue an appeal and found that argument unsupported by anything other than the statements of counsel and otherwise belied by the evidence that plaintiff was able to successfully fulfill the other administrative deadlines and requirements to move her claims through the entirety of the appeals process at the administrative level.  (Tr. 15-16.)  To the extent that decision is reviewable at all, therefore, it is supported by substantial evidence and provides no basis justifying remand.

Plaintiff next claims that the ALJ improperly discredited her subjective reports regarding her pain and limitations.  More particularly, she suggests that the ALJ failed to properly apply the analysis required by **Luna v. Bowen**, 834 F.2d 161 (10th Cir. 1987),[5] for evaluating subjective complaints of pain.  This argument is belied by the record.  The

---

[4] This ruling provides that a claimant may establish mental incapacity for the purpose of establishing good cause to reopen "when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review."  **Social Security Ruling** 91–p, 1991 WL 208067 at *2.  Factors relevant to this determination include: an inability to read or write; a lack of facility with the English language; a limited education; and any mental or physical condition which limits the claimant's ability to do things for herself.  **Id.**  The first three of these factors are not relevant in this case, and the ALJ thoroughly considered the final one.

[5] In **Luna**, the Tenth Circuit outlined a tripartite test for evaluating subjective complaints of pain:

> We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

**Musgrave**, 966 F.2d at 1375-76 (citing **Luna**, 834 F.2d at 163-64).  The Commissioner's regulations have distilled this test into two parts, but the required analysis is the same.  **See** 20 C.F.R. §§ 404.1529 & 416.929; **see also Social Security Ruling** 96-7p, 1996 WL 374186 (SSA July 2, 1996)..

ALJ specifically referred to the regulations and interpretive guidelines setting forth these standards (*see* Tr. 20), and nothing in his opinion gives me reason to believe that he did not consider and apply the relevant factors, or that he did so incorrectly, *see* ***Cox v. Apfel***, 2000 WL 1472729 at * 8 (D. Kan. Feb. 24, 2000) (citing ***Hamilton v. Secretary of Health & Human Services***, 961 F.2d 1495, 1498-99 (10th Cir. 1992)).

The ALJ noted that plaintiff suffered from severe impairments, but found that plaintiff's complaints were far out of proportion to the relatively mild objective evidence. The ALJ made it abundantly clear that he believed plaintiff to be unworthy of credence largely due to her vastly inconsistent – and, in some instances, patently false – reports to various treatment providers and consulting examiners regarding both her symptoms and the frequency and amount of her past and present drug and alcohol use.[6] His determination in this regard is well-documented in the opinion and supported by the record.[7] In general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." ***White v. Barnhart***, 287 F.3d 903, 909 (10th Cir. 2001) (citing ***Kepler v. Chater***, 68 F.3d 387,

---

[6] The ALJ also noted that plaintiff's allegations of severe pain were undermined, *inter alia*, by the fact she relied largely on over-the-counter medications to treat her symptoms. (Tr. 25.) Although plaintiff suggests that doctors were reluctant to prescribe narcotics due to her drug and alcohol history, the same provider who expressed these concerns prescribed other medications. (Tr. 295.) The related suggestion that plaintiff could not afford stronger medications, although finding some sporadic support in the record (*see, e.g.*, Tr. 221, 281, 286), is supported only by plaintiff's own statements, which seem to be limited further to an alleged inability to afford Prozac. Treatment records suggest that plaintiff was able to fill her prescriptions most of the time (*see, e.g.*, Tr. 254, 273, 287), and in light of the other medications plaintiff took regularly, it is difficult to credit that Prozac – which specifically was noted to cost $9 for a three-month supply (Tr. 286) – alone was beyond plaintiff's means.

[7] Plaintiff claims that, having refused to reopen the prior determinations, the ALJ could not properly reference evidence of her drug and alcohol use during that period to discredit her testimony. She cites no authority for this proposition. Assuming *arguendo* that such consideration was erroneous, the ALJ also cited ample evidence from the period after the prior unfavorable disability decision which supported his determination in this regard. (Tr. 27-28.) ***See Williams v. Chater***, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal.").

390-91 (10th Cir. 1995)).  So long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference.  *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Such deference is warranted here.  The ALJ here gave multiple, specific, legitimate reasons for his determination that plaintiff's allegations were entitled to less than full weight.  (*See* Tr. 33-34.)  Although plaintiff points me to evidence in the record which allegedly supports her veracity, her arguments essentially ask me to reweigh the evidence, which I am neither inclined nor empowered to do.  *See Thompson*, 987 F.2d at 1487.  The record in this case contained multiple, conflicting medical opinions and wildly divergent accounts of plaintiff's symptoms and medical history.  Resolving such conflicts in the evidence is the ALJ's responsibility, and he did not err in discharging that duty here.  *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988); *Gleason v. Apfel*, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999).

Plaintiff also takes issue with the ALJ's rejection of the disability opinion of Dr. Matthew Brett, which she claims supports her allegations and was entitled to greater consideration as a treating source opinion.  (Tr. 26.)  *See* 20 C.F.R. § 404.1527(c)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  The opinion on which plaintiff relies consists of Dr. Brett's statement on a Med-9 form[8] that plaintiff was disabled due to an unspecified mental or physical impairment.  (Tr. 311.)  The determination that a claimant is disabled *vel non* is an issue reserved to the

---

[8] "The Med–9 form is part of the application for benefits under the Colorado State Aid to the Needy Disabled (AND) program." *Karstetter v. Colvin*, 2013 WL 1768689 at *4 (D. Colo. Apr. 23, 2013). The definition of disability and standards for granting benefits under that program are not necessarily coextensive with those which are determinative of plaintiff's applications for social security benefits. *See Ybarra v. Astrue*, 2009 Wl 3162240 at *9 (D. Colo. Sept. 30, 2009);

Commissioner, and although a medical source statement on that issue must be considered, it is entitled to no particular weight.[9]  **See** 20 C.F.R. §§ 404.1527(e) & 416.927(e); **Sosa v. Barnhart**, 2003 WL 21436102 at *5 (D. Kan. April 10, 2003), **adopted**, 2003 WL 21428384 (D. Kan. Jun. 17, 2003).  Although the Tenth Circuit has refused to find categorically that Med-9 forms are entitled to no weight, especially when they have been completed by a treating source,[10] **see Andersen v. Astrue**, 2009 WL 886237 at * 6-7 (10th Cir. Apr. 3, 2009), the ALJ did not reject Dr. Brett's opinion on that basis alone, **see Karstetter v. Colvin**, 2013 WL 1768689a t *4 (D. Colo. Apr. 23, 2013). Instead, he noted that the opinion was vague as to the nature of plaintiff's allegedly disabling impairment and unsupported by any narrative or objective findings, and specifically not supported by Dr. Brett's contemporaneous examination of plaintiff.  (Tr. 20, 484.)  These reasons are legitimate and specific, and the ALJ therefore did not err in failing to assign any greater weight to this opinion.

Finally, plaintiff maintains that the residual functional capacity assessment fails to adequately account for the moderate mental limitations found by the non-examining state agency psychological consultant.  Dr. Mark Berkowitz noted a number of areas in which he found plaintiff to be moderately limited in the initial portion of his opinion.  (**See** Tr. 60-61.)  However, under the Commissioner's guidelines, these findings constitute the medical consultant's analysis of the evidence and are "merely a worksheet to aid in

---

[9] In particular, and contrary to plaintiff's intimation, such an opinion is never entitled to controlling weight.  **See Social Security Ruling** 96-8p, 1996 WL 374184, at *8 n.8 (SSA July 2, 1996); **Campos v. Astrue**, 373 Fed. Appx. 880, 883 (10th Cir. Apr. 19, 2010).

[10] I will assume *arguendo* that Dr. Brett is properly considered a treating source.  Dr. Brett practiced with the medical clinic where plaintiff received treatment for many years from a number of different providers.  It appears that the first time Dr. Brett saw plaintiff personally, however, was December 16, 2010 (Tr. 484), the same day he authored the Med-9 form (Tr. 311).

deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." **Program Operations Manual System** ("**POMS**") DI 24510.060(B)(2) (eff. Oct. 14, 2010) (available at https://secure.ssa.gov/poms.nsf/lnx/0424510060) (last accessed Sept. 17, 2014)).[11] These findings ultimately are distilled into a statement of the medical consultant's opinion as to residual functional capacity, *see id.*, DI 24520.060(B)(4), which here resulted in Dr. Berkowitz's conclusion that plaintiff could perform simple tasks with moderate public contact (Tr. 62).  The ALJ did not err in incorporating this final opinion into his own residual functional capacity assessment.  (Tr. 23, 30.)[12]

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated September 18, 2014, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

---

[11] The POMS is "a set of policies issued by the [Social Security] Administration to be used in processing claims." **McNamar v. Apfel**, 172 F.3d 764, 766 (10th Cir. 1999).  Courts should "defer to the POMS provisions unless [they] determine they are arbitrary, capricious, or contrary to law." **Ramey v. Reinertson**, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (citation and internal quotation marks omitted).

[12] Moreover, plaintiff overstates the impact of her attorney's questioning of the vocational expert about the impact of these more specific limitations.  (*See* Tr. 547-549.)  Nothing in the record suggests that the very specific definition of "moderately limited" which plaintiff posited to the vocational expert mirrors – or is even remotely related to – the definition Dr. Berkowitz employed in making his findings..